**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Case No. 26-cv-01120-NYW

CARLOS OLIVERA-MARTINEZ,

      Petitioner,

v.

GEORGE VALDEZ, in his official capacity
JUAN BALTAZAR, in his official capacity, and
TODD LYONS, in his official capacity,

      Respondents.

---

**MEMORANDUM OPINION AND ORDER**

---

This matter is before the Court on the Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (the "Petition"). [Doc. 1]. Respondents filed a Response to the Petition on March 30, 2026, [Doc. 8], and Petitioner filed a Reply on April 3, 2026, [Doc. 9]. For the reasons herein, the Petition is respectfully **GRANTED in part**.

**BACKGROUND**

Petitioner Carlos Olivera-Martinez ("Petitioner" or "Mr. Olivera") is a citizen of Cuba "who entered the United States in May 1980 as part of the Mariel Boatlift." [Doc. 1 at ¶ 1]. He became a lawful permanent resident of the United States in 1989, *see* [*id.*; Doc. 8-1 at ¶ 6], and is presently married to a U.S. citizen and has five U.S. citizen children, [Doc. 1 at ¶ 1]. In 1992, Mr. Olivera was convicted of several state charges related to an attempted burglary and was sentenced to ten years' imprisonment. [*Id.* at ¶ 50]. Subsequently, Mr. Olivera was placed in deportation proceedings and ordered deported by an immigration judge. [*Id.* at ¶¶ 2, 51; Doc. 8-1 at ¶ 8]. Mr. Olivera did not appeal the

order of removal.  [Doc. 1 at ¶ 51].  After Mr. Olivera was released from criminal custody in or around 1996, "he was transferred to immigration detention, where he remained detained for approximately seven months."  [*Id.* at ¶¶ 2, 52].  "Cuba refused to accept him," so the Government released Mr. Olivera from custody.  [*Id.* at ¶ 52].

Over the following approximately 28 years, Mr. Olivera was subject to numerous Orders of Supervision.  [*Id.* at ¶¶ 3, 53–54].  Mr. Olivera never violated the terms of his Orders of Supervision and reported to the required check-ins with immigration officers. [*Id.*].  In recent years, his Order of Supervision required annual check-ins.  [*Id.*].  Two months after his most recent scheduled check-in, in February 2026, ICE called him and told him to start reporting to ICE in Florence, Colorado rather than Denver.  [*Id.* at ¶¶ 4, 55–56].  At ICE's instruction, Mr. Olivera went to a check-in in Florence on February 16, 2026. [*Id.* at ¶ 56].  There, an officer told him that "she was going to detain him due to his removal order." [*Id.* at ¶ 57].  Mr. Olivera was not given any paperwork, warrant, or other information explaining the basis of the revocation of his Order of Supervision.  [*Id.* at ¶¶ 57–58].

Since Mr. Olivera's detention, ICE informed him "that Cuba would not accept him and that ICE was going to send him to Mexico."  [*Id.* at ¶ 59].  Mr. Olivera told ICE that "he is afraid to go to Mexico," so DHS officers interviewed Mr. Olivera regarding this fear. [*Id.* at ¶¶ 59–60].  The officers found that he had not proven that he would be persecuted or tortured in Mexico.  [*Id.* at ¶¶ 5, 60; Doc. 8-1 at ¶ 15].  Mr. Olivera has not been given an opportunity to have an immigration judge review that determination.  [Doc. 1 at ¶ 60]. As of March 30, 2026, however, "ICE does not believe that it will be able to effectuate Petitioner's removal to Mexico in the reasonably foreseeable future."  [Doc. 8-1 at ¶ 16].

Instead, "ICE considers Cuba to have a significant likelihood of removal in the reasonably foreseeable future." [*Id.* at ¶ 17]. ICE represents that "Cuba has been allowing the removals of more Cuban national[s] in recent months," ICE is "working with the Government of Cuba to removal Cuban nationals," and ICE is "actively seeking Petitioner's removal at this time." [*Id.* at ¶¶ 17–19]. The Government currently purports to detain Mr. Olivera pursuant to 8 U.S.C. § 1231(a). [Doc. 8 at 4].

Mr. Olivera brings six claims challenging the lawfulness of his detention: (1) violation of the Immigration and Nationality Act ("INA") for lacking a statutory basis for detention; (2) violation of the INA for failing to properly designate country for deportation; (3) violation of his substantive due process rights; (4) violation of regulations relating to the revocation of his Order of Supervision; (5) violation of his procedural due process rights relating to the revocation of his Order of Supervision; and (6) violation of his procedural due process rights for failing to provide a review of his no-fear determination. [Doc. 1 at ¶¶ 62–107]. He seeks, among other things, a writ of habeas corpus ordering that he be released from custody. [*Id.* at 24].

This matter is ripe for disposition. No Party has requested an evidentiary hearing or oral argument, and the Court finds that no hearing is necessary. *Garcia Cortes v. Noem*, No. 25-cv-02677-CNS, 2025 WL 2652880, at *1 (D. Colo. Sept. 16, 2025) (declining to hold a hearing where the petitioner's habeas challenge was "fundamentally legal in nature").

## LEGAL STANDARD

A court may issue a writ of habeas corpus when a person is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "The

3

essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas*, 533 U.S. at 687–88).

## ANALYSIS

Mr. Olivera argues that his detention is unlawful because ICE violated its own regulations—and his procedural due process rights—by failing to provide notice of revocation of his release and an opportunity to be heard regarding the same. [Doc. 1 at ¶¶ 83–100]. Because the Court finds that Mr. Olivera is entitled to habeas relief on these grounds, it does not address his remaining arguments. *See Sanchez v. Bondi*, No. 25-cv-02287-CNS, 2025 WL 3484756, at *1 (D. Colo. Dec. 4, 2025); *Zhu v. Genalo*, 798 F. Supp. 3d 400, 415 (S.D.N.Y. 2025).

Respondents do not explain why or pursuant to which regulation Mr. Olivera's release on an Order of Supervision was revoked. *See* [Doc. 8; Doc. 8-1 at ¶ 11 (Declaration of ICE Deportation Officer Aaron Johnson stating only that "Petitioner's release on OSUP was revoked")]. As both Parties acknowledge, 8 C.F.R. §§ 241.4(l) and 241.13(i) outline the procedure for revoking an Order of Supervision and detaining a noncitizen. [Doc. 1 at ¶¶ 37–39; Doc. 8 at 11]. These regulations apply to noncitizens who were originally ordered deported prior to the enactment of the 1996 Illegal Immigration Reform and Immigration Responsibility Act ("IIRIRA"), such as Mr. Olivera.[1] 8 C.F.R. § 241.4(a)(3); *see also* 8 C.F.R. § 241.13(a) (incorporating § 241.4).

---

[1] While the Parties disagree about which statute governs Mr. Olivera's detention, *see*

Given that Respondents do not argue that Mr. Olivera violated any conditions of his release, *see* [Doc. 8], revocation of his release may be subject to 8 C.F.R. § 241.4(l)(2) or § 241.13(i)(2).  Both regulations require that (1) notice be provided to the noncitizen "of the reasons for revocation of his or her release," and (2) the noncitizen receive "an initial informal interview promptly after his or her return to Service custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification."  8 C.F.R. §§ 241.4(l)(1),[2] 241.13(i)(2).  Additionally, § 241.4(l)(2) requires that the revocation of release be made either by the Executive Associate Commissioner or, under certain circumstances, a district director.  8 C.F.R. § 241.4(l)(2).

The Court agrees with Mr. Olivera that the revocation of his release was effectuated absent compliance with the above regulations.  First, Respondents do not dispute Mr. Olivera's assertions that he was not provided with any notice or informal interview promptly upon being detained.  *See* [Doc. 1 at ¶¶ 58, 86–88; Doc. 8].  Second, there is nothing in the record suggesting that the revocation was made by someone with

---

[Doc. 1 at ¶ 23 (Mr. Olivera contending that because he was ordered deported prior to IIRIRA going into effect, "his potential deportation is governed by the prior statutes, including 8 U.S.C. § 1251 (1993)"); Doc. 8 at 4 (Respondents stating, without support, that Mr. Olivera is detained under 8 U.S.C. § 1231(a))], there is no dispute that that Mr. Olivera was originally ordered deported pursuant to the pre-IIRIRA version of 8 U.S.C. § 1251, *see* [Doc. 8-1 at ¶ 8 (Declaration of ICE Deportation Officer Aaron Johnson stating that Mr. Olivera was originally ordered deported in 1993 pursuant to INA § 237(a)(2)(A)(iii) [which at the time was codified as 8 U.S.C. § 1251(a)(2)(A)(iii)])].

[2] *See Banega v. Warden of Soft Side S. Facility*, No. 25-cv-01152-JES-DNF, 2026 WL 234042, at *3 (M.D. Fla. Jan. 29, 2026) ("Courts routinely 'interpret[] section 241.4(l) as requiring an informal interview upon the revocation of release regardless of the reason for the revocation'—meaning that the notice and interview requirements stated in § 241.4(l)(1) also apply to revocation under § 241.4(l)(2)." (collecting cases)); *Guerra v. Bondi*, No. 25-cv-01240-G, 2026 WL 114258, at *5–6 (W.D. Okla. Jan. 15, 2026) (finding that notice and interview requirements apply to revocations conducted pursuant to § 241.4(l)(2)); *Funes v. Francis*, 810 F. Supp. 3d 472, 491 (S.D.N.Y. 2025) (collecting cases regarding the same).

the requisite authority, as required by § 241.4(l).  Naturally, Mr. Olivera does not have any evidence of this, [Doc. 1 at ¶ 88; Doc. 9 at 8], considering that he did not even receive a notice of his revocation.  And Respondents do not address this issue at all, let alone provide any information to counter Mr. Olivera's assertion.  *See, e.g.,* [Doc. 8-1 at ¶ 11 (Declaration of ICE Deportation Officer Aaron Johnson stating only that "Petitioner's release on OSUP was revoked" after "ICE officers encountered Petitioner at or near Pueblo, Colorado")]; *see also Nazarian v. Noem*, 5:25-cv-02694-KK-ADSx, 2025 WL 3236209, at *5 n.4 (C.D. Cal. Nov. 3, 2025) (finding that because "Respondents do not specify who made the decision to revoke Petitioner's release[,] . . . to the extent Petitioner's revocation was a discretionary act pursuant to Section 241.4, Respondents do not establish the decision was issued by a properly authorized official").

Respondents' main argument in response to ICE's failure to comply with its own regulations is that any "lack of procedural due process" may be remedied only by "additional process, not immediate release."  *See* [Doc. 8 at 10].  But courts across the country routinely hold that (1) ICE violating its own regulations in detaining an individual is a due process violation,[3] and (2) this violation makes the detention unlawful and the

---

[3] Petitioner's recent filings suggest that ICE may have provided Mr. Olivera with a notice formally revoking his Order of Supervision on April 15, 2026, two months after detaining him.  *See* [Doc. 10; Doc. 11].  However, none of the documents attached by Petitioner appear to be a compliant notice stating the reasons for revocation.  *See* [Doc. 11-1; Doc. 11-2; Doc. 11-3; Doc. 11-4].  And Respondents have not responded to these filings to clarify.  Either way, to comport with due process, notices of revocation must be provided "[u]pon revocation," not months later.  8 C.F.R. §§ 241.4(l)(1), 241.13(i)(3); *see, e.g.*, *Constantinovici v. Bondi*, 806 F. Supp. 3d 1155, 1165 (S.D. Cal. 2025) (ruling that ICE failed to follow its regulations and violated petitioner's constitutional due process rights where it did not provide the requisite notice and informal interview until petitioner had already been detained for one month); *Gudino v. Lowe*, No. 25-cv-00571-KM, 2026 WL 526366, at *11 (M.D. Penn. Feb. 25, 2026) (finding that "[t]he Gove[rn]ment giving [petitioner] notice twenty-six days after revocation is not notice 'upon revocation'" and

proper remedy is release.  *See, e.g.*, *Sanchez*, 2025 WL 3484756, at *2 (ordering release

of noncitizen when ICE failed to follow its own regulations (collecting cases)); *Nguyen v.*

*Hyde*, 788 F. Supp. 3d 144, 152–53 (D. Mass. 2025) ("ICE, like any agency, has the duty

to follow its own federal regulations. . . .  As here, where an immigration regulation is

promulgated to protect a fundamental right derived from the Constitution or a federal state

and ICE fails to adhere to it, the challenged action is invalid." (cleaned up) (citing

*Zadvydas v. Davis*, 533 U.S. 678, 690 (2001))); *Guerra v. Bondi*, No. 25-cv-01240-G,

2026 WL 114258, at *8 (W.D. Okla. Jan. 15, 2026) ("Habeas corpus relief is warranted"

where "Respondents' failure to comply with § 241.4(l)(3) resulted in redetention,

accompanied by a lack of notice or a meaningful opportunity to respond."); *Funes v.*

*Francis*, 810 F. Supp. 3d 472, 502 (S.D.N.Y. 2025) (finding that the court must order the

petitioner's release in "align[ment] with numerous cases releasing habeas petitioners held

in custody following procedural due process violations" (collecting cases)); *Grigorian v.*

*Bondi*, No. 25-cv-022914-RAR, 2025 WL 2604573, at *9–10 (S.D. Fla. Sept. 9, 2025)

("The failure to provide Petitioner with an informal interview promptly after his detention

or to otherwise provide a meaningful opportunity to contest the reasons for revocation

violates both ICE's own regulations and the Fifth Amendment Due Process Clause.  This

---

therefore the government violated petitioner's procedural due process rights).  The documents that ICE provided to Mr. Olivera well after he was detained, therefore, are insufficient to cure the due process violations here.  Respondents may not detain first and sort out the legal authority afterwards.  *Gopie v. Lyons*, No. 25-cv-05229-SJB, 2025 WL 3167130, at *3 (E.D.N.Y. Nov. 13, 2005) ("ICE does not have free-ranging ability to arrest and detain people, and figure out the reasons later, like they apparently did here."); *Vang v. Bondi*, No. 26-cv-01381-JMG, 2026 WL 458195, at *3 (D. Minn. Feb. 13, 2026) ("The government detained the petitioner first, and asked questions later.  That's not how this works.").

compels Petitioner's release.   Courts around the country have concluded likewise." (collecting cases)).

Accordingly, the Court respectfully **GRANTS** Mr. Olivera's habeas petition in part and **ORDERS** Respondents to immediately release him subject to the terms of his Order of Supervision.

## CONCLUSION

For the reasons set forth above, **IT IS ORDERED** that:

(1)   The Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 [Doc. 1] is **GRANTED in part**;

(2)   Respondents are **DIRECTED** to immediately release Petitioner subject to the terms of his Order of Supervision; and

(3)   Respondents **SHALL SUBMIT** a declaration pursuant to 28 U.S.C. § 1746 **within three days** of this Order affirming Petitioner's release from custody.

DATED:  May 15, 2026                    BY THE COURT:

_____
Nina Y. Wang
United States District Judge

8